Our third case for this morning is Design Basics v. Signature Construction, 1927-16. Mr. Judge. Good morning, Your Honor. The record below contained evidence of direct copying. Four of Design Basics' copyrighted home plans were found in the design files for the defendants' remarkably similar home plans. Could I maybe just tweak what you just said? It seems to me the record does show that for those four, there was access. Whether access then shows copying is another question. Obviously, you've got to go through the substantial similarity analysis and so on. So access alone isn't enough to show copying. Yes, Your Honor. We think at the very least for Design Basics' Shawnee plan, where in defendants' files was a copy of Design Basics' Shawnee plan and in red marker there were modifications requested on that plan and later testimony from the designer, the drafter, indicated that he used that marked up Design Basic plan in order to create the defendant's plan at issue. We think that constitutes an admission of direct copying. I'm going to still be a little picky about this. It seems to me if I were writing a romance novel or something, I could take somebody else's novel and write notes to myself about how I want my story to be different and the question in the end is still whether there's that substantial similarity. Those notes could be evidence of it, but you'd still need to look at the layout, in this instance the architectural design, to see whether those initial thoughts got implemented. I think it's still required, even in a case of direct copying, to show that copyrighted expression was misappropriated, was incorporated into the defendant's plans. That's what I'm saying. So you can look at somebody else's plan and write notes all over it yourself. I hate the fact that this is a two-story house. I'm going to do mine as a one-story or something. You could say a lot of things. In the end, we just have to look at the plans. Here I want to ask you whether you think the question of substantial similarity, which for the four you're talking about I think is very important, is one of fact or law. Is that for the judge or the jury? I believe, Your Honor, that is for the jury. Our position is that's where the district court erred below is the district court took that decision upon himself and substituted his own judgment for what should have been a question for the jury, guided by the evidence that Design Basics put on in this case, including its expert report. Okay. I thought you were going to say that. So my next question is this, and this is where I really run into a wall. Some similarity is inevitable because of things like Senefair and the like. Too much similarity is impermissible because of the copyright laws. So how, in your view, do you instruct the jury on that vital question, when does it cross the line from okay to too much? In our view, the proper way to do that in this case would have been to allow our expert witness to address the jury. The question was how do you instruct the jury? The jury can be instructed about what is and is not protectable expression in a home plan. But how do you tell them, you know, like if the similarity is just these are both houses with one master bedroom and three other bedrooms, surely that is not copyrightable. There are a billion houses like that out there, and there's no originality, master bedroom and three bedrooms. So you have to be able to tell the jury when they're sitting there, as probably all three of us have been doing, staring at these plans, what is it that tells them that now we've entered into the region of copyright infringement, that these are simply too much alike given the policies and the statutory language of the Copyright Act to allow somebody to use them in that way. I don't have the exact jury instruction that I would propose in that, but I think your honest question. Is it just Potter Stewart they know when they see it? I mean, that's very unsatisfactory to me. No, I think there has to be evidence, and certainly at the summary judgment stage. But you need to tell the jury what to do with that evidence. That's where I'm trying to get you to focus. What the similarities have to show is that it's very unlikely that for a particular plan or for a particular series of plans that the defendants would have independently come up with a plan that shares as many similarities both across standard features as well as non-essential, non-standard aesthetic features. And that's what our expert witness here, the analysis that he did to point out what these similarities were. That's not the way I read it, frankly. What standard do you think Mr. McNicholas applied? What legal standard do you think he applied in reaching his legal conclusions in his affidavit? He considered whether or not the plans were substantially similar. In fact, in his opinion, he also says he's applying substantial similarities. Did he apply the Lexington Homes standard? He references the Lexington Homes, and he does mention that in his opinion they're superstantially similar. My question was did he apply the Lexington Homes standard? It looks like he's disagreeing with it. I believe his analysis does apply the Lexington Homes standard, even though he does disagree with it. He mentions that in his opinion there is superstantial similarity between these plans, and in his conclusion he mentions he identifies things like an entrance with a dining room to the left and a parlor to the right. I could do readings from his report, but I look at it, and I see kind of a marketing pattern for homebuyers and legal conclusions. Can you point us to analysis in his affidavit that would make it something beyond I know it when I see it, that would make it verifiable or falsifiable for another architect to agree or disagree with something other than subjective opinion? Yes, Your Honor, and I think there's two places to look. One, Section 6 of the report, which has the overlays on it, which is the direct comparison, the annotated overlays, and he explains exactly what he's doing here with the covered overlays, and he does lay them out also side by side. And if I can take, for example, because I think this is important in getting to when we say the overall form and arrangement is copyrighted, what exactly are we talking about, and why does our expert get us closer there here? And I would pick the Linden plan here, and the appendix that's at A90. It's a little bit bigger and easier to read than in the brief. Which is the same one that the district court kind of cleaned up and put at the bound appendix 24, I think. Yes, the district court put a number of these in the bound appendix. And so if we look at this and kind of walk through this, I'll point out a number of things, which I wouldn't say that any of them are unique, but that's not required for copyright protection. So as you approach the house, in Number 11, looking at the massing of the house, you see a certain setback on the right-hand side as we look at it. Again, you might see that in a lot of hands, but it affects what you see when you approach the home. When you walk through the front door, now, of course, you've got a study on one side and a dining room on the other side. Nothing particularly unusual about that, but it is a design choice here. As you walk through the foyer, we come to the first not unique but unusual and non-essential feature, which is this diagonal set of doors leading into the study up here. Now, again, this isn't the only plan in the world that uses something like that. What are we looking at here? Sorry. So Number 8, we're on A98, where the doors to the study on the left-hand side are kind of anchored. Just across from that, you see a half set of stairs going up to a landing. This, again, is an unusual and not functionally dictated design choice here. There's another half set of stairs that's going down behind the dining room, which allows for a path of travel to get up the stairs as you come in from the other side of the house. Again, this is not the only house. It's probably not Design Basics' only house that has this plan, but it's a non-essential design choice that's in here. As you go up the stairs, there's what Mr. McNicholas characterizes as a non-standard and complex railing and overlook condition, which allows you to kind of see through into the back as you go through. Again, we have this, what Mr. McNicholas characterizes as the superfluous set of stairs. Again, not required, not essential, not necessarily unique. In the dining room, as you go into the dining room, there's a— That's where we have trouble. Uniqueness is not required. It's the overall—and I guess what I would say is all of these things, some of them are functionally suggested, some of them are purely aesthetic considerations, but where it becomes evidence of copying and evidence of substantial similarity is the more of these features that we can lay out that are in both plans. It's a question of what's protectable. That's the essence of the Lexington Homes analysis that takes into account the vast number of standard home designs. As I read McNicholas, he's disclaiming any protection for ornamental details, for kind of the appearance from the street, roof lines, dimensions, but he's relying solely on this arrangement of spaces and flow, right? I think those elements you discussed as well do play a role in the copyright analysis, and I don't agree that Mr. McNicholas is disclaiming any protection for them. I think he's disclaiming protection for them on an individual basis, that I chose this particular design for a lindle or I chose this, but putting all of those together— So are we left and is a jury left with anything other than I know it when I see it and two experts try to charm the jury in a way, a jury that cannot be given meaningful guidance by the district court? I think the question ultimately does need to be left to the jury. I think there's only limited guidance that the district court can give. I think evidence like the experts, and here we have one expert in Lexington. There was an expert on the defendant's side who can provide— The other point I wanted to raise about what Mr. McNicholas's report provides, and I think this helps to guide the jury in figuring out whether this— There's obviously going to be similarities and differences between all of these plans, and some of the question, I think, for the jury and the court is, what do those differences mean? Are those significant differences from an architectural perspective? Are there significant similarities? I think Mr. McNicholas's report lays out the process of design variations as are used in the housing industry and explains what differences would be expected when somebody takes a plan and makes slight modifications, which in that case— Could I just interrupt you and say, I mean, I was thinking about that, because obviously Design Basics has some 2,700— that was the number that we cited in Lexington homes, a huge number of home designs. And I assume that you think each one of those is independently copyrightable, so little tiny tweaks are enough to create meaningful difference between them. So why aren't the little tiny tweaks enough also to create meaningful difference if it happens to be Signature or somebody else, the XYZ Company? I think in that case, Your Honor, we're dealing with a case of an unauthorized derivative. You can make changes, but it's the copyright holder's right to control who's allowed to make those changes, and I don't think it can be the case that somebody can take one of Design Basics' plans and just make a certain number of very small changes to it and say it's off. That gets us back to the question, what's a significant enough change to allow somebody to feel that they're clear from a copyright point of view? Maybe they have to file a declaratory judgment action every time they make a change to a plan just to make sure it's a big enough change to get it outside of the copying realm. I mean, the Design Basics plans are widely available. I don't think access is actually ever going to be a big issue there. They're on the Internet, right? They're in catalog books. They're all over the place. Certainly in this case, they have been sent to the defendants. You spread them widely and expect to find them in discovery, right? We do expect to find them, and Design Basics makes no apologies for its attempt to protect its copyrighted home plans. Design Basics believes that its plans are being stolen with great frequency. On that issue and some of the issues addressed in your brief, Mr. Judge, could you tell us what the relative proportion is of revenues for Design Basics between license fees on the one hand and litigation settlements and judgments on the other? That information is not in the record, and I don't have it prepared for you today. I'm going to have to ask you to sit down because your time has expired. Thank you. Ms. Calger. May it please the court, I want to start with the record evidence and the point where Design Basics counsel walked the court through the Signature Homes Linden or the Design Basics plan Linden versus Signature Homes, and just note that in the record we have unrefuted evidence of the independent creation of the Ridgemont plan. So I thought it was interesting that when showing the two parts that your Honor pointed out are needed, which is both access and substantial similarity, in trying to provide evidence of substantial similarity, counsel went right to a plan that we have very specific unrefuted story and explanation of when it was created. So I take your point that certainly even if you have access and similarity, if somebody can come up with an ironclad story of independent creation, the copyright laws are not like the patent laws. The copyright laws let you independently create. Maybe you were on the top of Mount Everest for the whole relevant time and you sketched out the plans. That's fine. I wonder if you could answer the same question I asked Mr. Judge, though. Are we looking at this substantial similarity element, which is very frequently going to be in litigation and is for at least some of the plans here at issue, is that something that is the jury's responsibility to decide, and if so, how do you instruct the jury? Well, one thing we would say for certain is we don't think that an expert should be instructing the jury on the law. And I think Judge Hamilton's point was well taken, and what was the information on which Mr. McNicholas was relying in coming up with his legal conclusions. Had this case gone to trial, I was going to rely on Lexington Holmes' statement of the law and the fact that you have a heightened standard. And how would you state that standard in a jury instruction? Virtual identity? Well, it says nearly complete copying. It was, I think, the standard that was put in. So the instruction would tell the jury that only a home design plan that is virtually identical to the copyrighted plans is a violation of the law. That would be the standard that I would take away from the Lexington Holmes. And I would say that it would be the copyright protection in this domain is extremely thin. Extremely thin, just like if we're talking about factual compilations, encyclopedia. But let me amend that just a little bit. In this domain is a critical part of what Judge Sykes just said because no one is saying that if you wanted to build a $20 million house and have it individually designed by the finest architects in the United States, that that wouldn't be just as subject to strong copyright protection as any other form of art that falls under the copyright acts. That could well be a unique Frank Lloyd Wright of today or something. Gene Gang designed it for you. If you're talking about tract homes that are used in developments to create very desirable, affordable housing for people, there are only so many ways you're going to tweak it. There are going to be so many bedrooms and there are going to be so many floors, and I think that was what we were getting at in Lexington, saying for this kind of thing, there's just not that much room. And there's functionality issues, too. You're not going to put the kitchen on a different floor from the main living area in the dining room in terms of the flow. And so with respect to this area, I think that the reply brief tried to compare the home design industry to poetry and painting, and it's just there are only so many ways to arrange a room. Now, Mr. McNicholas would take issue with that, and he would say there are countless ways to arrange three bedrooms and two bathrooms on separate floors. So would the jury be entitled to think, I'm looking back at this just for the sake of discussion, Linden and Ridgemont, and it appears in the second floor that the master bedroom in the Linden is 13 feet by 15 feet, and in the Ridgemont it's 13 feet 4 inches by 16 feet 8 inches, so somewhat different dimensions. Is that enough to make them different in your view? Well, I would say that I am not an expert on copyright. Yeah, but suppose you're sitting at the jury. If that was the sole change in this house, Your Honor, I would feel like I have a hard row to hoe in front of a jury. Oh, the sole change is the dimensions and size of that bedroom. But that's not what we have here. What we have here is a court that went through that said, not only are rooms different sizes, but they're different dimensions. The outside features are different. In the one where Design Basics is claiming evidence of actual copying, which they don't have, but where they're claiming that, the bathroom is on different sides of the hall, like it's on the same side of the master bath in Signature's plan, and it's across the hall in Design Basics' plan. And when it comes to putting a master bedroom with a bath, two other bedrooms and a bathroom, and a loft on a second floor in a house, there's not that many ways to do that and maintain walkways and a flow that makes sense. So with respect to reframing the issue in terms of summary judgment here, as Judge Wood pointed out at the beginning, showing access, which is all they've done with the four plans, is show access. And that's only four of 11 plans, and we have other grounds for summary judgment on the others. But with respect to access, that's not enough. Then the plaintiff has to show that the allegedly infringing work is indeed a copy of her original, pointing to similarities between the two works. And, you know, it goes on in Lexington to say, we have never endorsed the idea that a high degree of access justifies a lower standard of proof. They still have the burden of showing substantial similarity. They're independent elements, yes. Ms. Collier, why shouldn't we reverse summary judgment on at least the Shawnee plan? It is summary judgment. We've got the marked up version. We've got testimony from the draftsman, if I recall correctly, that I was told basically to make these modifications. Why isn't that a derivative work? Or at least why couldn't a jury reasonably find that it's a derivative work? Because the only parts that were translatable are those parts that aren't protectable. They're functional. They're the parts that talk about walking in a door and being in the living room and having the kitchen behind it with the breakfast nook off of it. These are the parts that we don't protect. And more importantly, and that's where I was headed before, let's frame this from a summary judgment standpoint. From a summary judgment standpoint, the evidence that was relied on to establish substantial similarity is the McNicholas report. The McNicholas report was rejected by the district court. In their reply brief, Design Basics said that the district court did not challenge the methodologies of Mr. McNicholas. The district court said, I looked at the evidence that you presented through Mr. McNicholas' report, and the manipulation, which I do not take lightly, the manipulation that he went through showed me more differences than it did similarities. So it isn't even a rejection of the testimony. It's saying, I've looked at your testimony, I've looked at your evidence, and it doesn't show what you say it shows. It doesn't provide the inference that you want. So the court both challenged the manipulation and that methodology and looked at the evidence and said, all it shows me is differences. But what the question gets back to, though, was the judge taking too much of the burden on himself. You know, I'm certain that that was the judge's honest view about, you know, what these manipulators, some of it's just flipping around mirror images and the like, which seems to me to be within the realm of the legitimate. But could a jury look at these, at least some of these plans, maybe not all of them, and think that they are derivative works of the copyrighted plans or that they are just flat-out copied? You know, why do you have to have, you know, the kitchen on one side and the dining room on the other side? You know, maybe some people like to have the kitchen right away since everybody always stays in the kitchen anyway. You know, so just why are those choices so inevitable? I think what we're looking for for copyrightability are choices that are not the inevitable result of the functionality that you're trying to achieve. Things that are expression, that's in the end. Well, what we're looking at in terms of summary judgment under the Lexington Home Standard is we're looking for the plaintiff to carry a burden of showing substantial similarities. Inprotectable elements. Inprotectable elements. And what happened in this case is that we provided evidence of the differences following the lead of Lexington Homes, and plaintiff in trying to show substantial similarities, inprotectable elements, failed in their burden. That's why this shouldn't go to the jury. They failed in their burden because what they submitted was a report of an expert that's based on a First Circuit test that shuns the Lexington Home Standard set out by this court and that manipulates the drawings in order to try to establish similarities that aren't there. So the combination of that and our testimony listing differences, the judge's analysis listing differences. Now, this time you did not have a countervailing expert, though. You had your client, right? Correct. Although I would suggest that he was giving opinion testimony. He was giving opinion testimony based on his many years in the business, his experience in this area. He wasn't a paid expert. He was someone with actual familiarity with how these plans developed, and he was disclosed as a lay expert pursuant to the case management plan and the rules. But again, I believe that based on the failure of the plaintiff to carry the burden of showing substantial similarities, their effort to shoehorn this test that isn't the test and to provide an expert report that does nothing more than saying, well, of course they're clearly substantially similar and issuing conclusions backfired on them. And based on this record, it goes right back to what was said in Lexington Home. We conclude that no reasonable jury could find that Lexington's accused plans, or in this case, Signature's accused plans, are substantially similar in any material way. I disagree with counsel that originality isn't an issue. We ended up going back on that Shawnee plan. We have a designated expert who's going to talk about originality. There is no originality. Well, maybe I'm cutting you off where you're going anyway, but I'm trying to imagine a trial of such claims, and I'm wondering if a defendant in such a case would come forward with five other overlays of the challenge plan with other plans built from around the country. If you want to take the Shawnee example that show the central entrance, the great room ahead, kitchen bath and dining, breakfast and dining to the left, master bedroom and two bedrooms to the right, et cetera. And that sounds like an exceedingly expensive way to try such cases, but I have very little doubt that it would be possible to do that. Is that where we would be headed? That is where we would be headed. We'd be talking about, look at all these different home sites on all these different websites. We'd be putting our client, who's a representative of several of the defendants on the stand, to say, yes, a lot of times people come to me and say, you know what I really like is that plan that they're building in the such and such subdivision. And they say, well, we can't build exactly that same floor plan, but tell us what you like about it. We live in a Pinterest world. People come in with plans. Tell me what you like about it. Tell me what you don't like about it. And I do want to clarify one thing. We didn't copy home plans. We aren't even alleged to have copied home plans. These are layouts. They're line drawings. A draftsman has to put a lot of effort into drawing up a home plan. There's not really a lot of incentive. You mean like the real plan with the electrical and the plumbing and all that. Cases where somebody walked into a place and is accused of taking the permit, the plans that were put together with the permit, and taking it out and removing the digital media. In other cases, that's the kind of thing that is protectable because those are actual plans and that is actual copying. This is the core set. It's drawing inspiration. It's deciding I'm not going to build that plan. And it's making substantial changes. And I wanted to go through all of those, the outdoor gables, the juxtaposition of the garage, the moving of the bathroom. But it's all in the record. So as my time runs out, I would ask you to affirm and to stand behind the Lexington Homes opinion. You've got two more appeals coming up here. People are watching this. But if not, I would turn to the other issues where we have evidence of independent creation. We have a lack of involvement by an individual defendant. We have a defendant that doesn't buy, sell, design homes. It just manages subdivisions. And note that this, if it goes back, has to go back extremely narrowly. All right. Thank you very much. Mr. Judge, how much time do we have? No time? Okay, I'll give you a minute if you need it, Mr. Judge. Thank you very much, Your Honor. Just to address briefly one of Judge Hamilton's later questions about what a trial would look like in terms of the evidence that comes in, I think if what Lexington Homes said is accurate and what the defendants say is accurate about there being only so many ways and so many of this dictated by functionality, then it should be possible for defendants in this case and others, using experts as they did in Lexington or otherwise, to come and show other plans that are just as close to Design Basics' plans as Signature's plans are. That's evidence that would rebut Mr. McNicholas's opinion that it's absolutely impossible that across this many plans, across this many features, this much specific layout, that it's absolutely impossible for copying. Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.